# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DELSHAH 60 NINTH, LLC.,

    Plaintiff,

 -against-

FREE PEOPLE OF PA LLC,

    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Index No. _____/20

**SUMMONS**

Plaintiff designates New York County as the place of trial. The basis of venue is the location of the subject premises.

TO THE ABOVE NAMED DEFENDANT:

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the plaintiff's attorneys within twenty (20) days after service of this summons, exclusive of the day of service; or within thirty (30) days after completion of service where the service is made in any other manner than by personal delivery within the state; and in case of your failure to appear or answer, judgment will be taken against you by default, for the relief demanded in the complaint.

Dated: New York, New York
   June 11, 2020

            **ROSENBERG & ESTIS, P.C.**
            *Attorneys for Plaintiff*

            By:_____
              Bradley S. Silverbush
            733 Third Avenue
            New York, New York 10017
            (212) 867-6000

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------- X
DELSHAH 60 NINTH, LLC.,

             Plaintiff,

  -against-

FREE PEOPLE OF PA LLC,

           Defendant.
------------------------------- X

Index No. _____/20

**VERIFIED COMPLAINT**

Plaintiff DELSHAH 60 Ninth, LLC ("Landlord" or "Plaintiff") by its attorneys, Rosenberg & Estis, P.C., as and for its Complaint, alleges as follows:

**PARTIES**

1. Plaintiff is a New York limited liability company with a principal place of business located at c/o Delshah Management, 114 East 13th Street, Frnt 1, New York, New York 10003.

2. Upon information and belief, defendant Free People of PA LLC ("Tenant" or "Defendant") is a foreign limited liability company organized under the laws of the State of Pennsylvania and registered to do business in the State of New York.

**FACTS**

3. Landlord is the owner and landlord of the building known as and located at 58-60 Ninth Avenue, New York, New York 10014, designated as Block 738, Lot 79, on the Tax Map of the Borough of Manhattan, City of New York (the "Building").

4. Tenant is in possession of approximately 6,800 square feet of space in the Building, of which 3,400 square feet is on the ground level and 3,400 square feet is on the level

immediately beneath the ground level, pursuant to a written lease agreement executed on or about March 13, 2015, between Landlord, as landlord, and Tenant, as Tenant (the "Lease")[1].

## A. Tenant's Payment Obligations Under the Lease

5.  Pursuant to Section 5(a) of Article 5 of the Lease, Tenant must pay Landlord Minimum Rent on the first day of the calendar month, in advance, without prior notice or demand and without any setoff or deduction.

6.  Article 7 of the Lease provides, in relevant part:

> Commencing on the Commencement Date, Tenant shall pay Landlord according to the following, in addition to the Minimum Rent specified herein:
>
> (a)(i) An amount equal to Tenant's Proportionate Share of the increase in all real estate taxes (the "Real Estate Taxes") levied against the Property during the Initial Lease Term and any Extension Term (such increase as to the entire Property, the "Tax Escalation") for, from and after, the "Comparative Year") (as that term is hereinafter defined) in excess of the "Base Tax Year" (as that term is hereinafter defined). Any amount payable under this **Section [7](a)** shall be billed by Landlord to Tenant as Additional Rent … Landlord may furnish to Tenant a statement setting forth Landlord's reasonable estimate of Tenant's Proportionate Share of the Tax Escalation for such Comparative Year Taxes (the "Tax Estimate"), and Tenant shall pay to Landlord on the first day of each month during such Comparative Year an amount equal to one-twelfth (1/12) of the Tax Estimate.
>
> *****
>
> (c) Tenant shall pay Landlord, within (30) days after presentation of invoice(s), in reasonable detail … (ii) fifty (50%) percent of the annual cost of a routine maintenance contract for the elevator in the Building

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Lease.

to be maintained, repaired by Landlord pursuant to the provisions of **Section [12](a)** hereof.

7. Section 21(a) of Article 21 of the Lease provides, in relevant part:

   Any other provisions of this Lease to the contrary notwithstanding, it shall be deemed to be an "Event of Default" under this Lease if (a) Tenant fails to pay any installment of Rent that is due and payable hereunder by Tenant and such failure continues for a period of ten (10) days after (i) the due date therefor as to installments of Minimum Rent, and (ii) ten (10) days after Tenant's receipt of notice thereof from Landlord as to the payment of any amount deemed to be Additional Rent …

B. **Landlord's Remedies Under the Lease**

8. Section 22(a) of Article 22 of the Lease provides, in relevant part:

   If an Event of Default as defined in **Section [21]** hereof shall have occurred and is continuing Landlord may, at its option:

   (i) Terminate this Lease by giving seven (7) days' prior notice thereof to Tenant and this Lease shall terminate with the same force and effect as though the date of such notice were the Expiration Date, and all rights of Tenant hereunder shall expire and terminate, but Tenant shall remain liable as hereinafter expressly provided …

9. Section 22(d) of Article 22 of the Lease provides:

   Upon election by Landlord to terminate this Lease as provided above in **Section 22(a)(i)** hereof, and Landlord does not elect to exercise its rights under **Section [22](c)** hereof:

   Tenant shall promptly surrender the Leased Space to Landlord, and Landlord may recover from Tenant all of the following:

   (i) The worth at the time of award of any unpaid rent which has been earned at the time of such termination; plus

(ii) The worth at the time of award of the amount by which the unpaid rent which would have been earned after termination until the time of award exceeds the amount of such rental loss that Tenant proves could have been reasonably avoided; plus

(iii) The worth at the time of award of the amount by which the unpaid rent for the balance of the Lease Term after the time of award exceeds the amount of such rental loss that Tenant proves could have been reasonably avoided; plus

(iv) Any other amount reasonably necessary to compensate Landlord for all the detriment proximately caused by Tenant's failure to perform its obligations under this Lease or which in the ordinary course of things would be likely to result therefrom, specifically including reasonable broker's fees and advertising expenses incurred by Landlord in connection with reletting the whole or any portion of the Leased Space, the reasonable costs incurred in removing and/or storing Tenant's or other Leased Space user's property, the cost of repairing, altering, remodeling, or otherwise putting the Leased Space into condition acceptable to a new tenant or tenants, whether for the same or a different use, economic incentives accepted by replacement tenants, and all other reasonable expenses incurred by Landlord in enforcing Landlord's remedies; plus

(v) At Landlord's election, such other amounts in addition to or in lieu of the foregoing as may be permitted from time-to-time by applicable law.

10. Article 22 of the Lease further provides, in relevant part:

The term "rent" as used in this **Section [22](d)** shall be deemed to be and to mean all sums of every nature required to be paid by Tenant pursuant to the terms of this Lease. As used in subsections (i) and (ii) above, the "worth at the time of award" shall be computed by allowing interest at the Default Rate. As used in subsection (iii) above, the "worth at the time of award" shall be computed by discounting such amount at the discount rate of the Federal Reserve Bank of New York at the time of award plus one percent (1%).

11. Article 40 of the Lease provides:

> Any payment of any sums hereunder, or sums advanced or expended to or on behalf of one of the parties hereto by the other party, whether by Landlord to Tenant, or by Tenant to Landlord, which is not made or repaid when due shall accrue interest at the Default Rate from the due date through the date of collection or set-off, as the case may be. If Tenant shall fail to pay all or any part of any installment of Rent, Additional Rent, or any other charge due hereunder for more than ten (10) days after Tenant receives notice of non-payment thereof from Landlord, Tenant shall pay to Landlord, upon demand, as liquidated damages, two ($.02) cents for each dollar of the amount that shall not have been paid to Landlord within such ten (10) day period.

C. **Landlord Terminates the Lease Based upon Tenant's Defaults**

12. Tenant failed to pay Landlord Minimum Rent and Additional Rent (consisting of Real Estate Taxes due pursuant to Section 7(a)(i) of the Lease and Elevator Charges due pursuant to Section 7(c) of the Lease).

13. By Notice to Tenant of Landlord's Failure to Receive Rent dated April 30, 2020 (the "First RPL 235-e(d) Notice"), Landlord advised Tenant that it was in arrears to Landlord for the period from March 1, 2020 through and including April 30, 2020, in the amount of $134,978.36.

14. On or about May 20, 2020, Tenant made a partial payment of its arrears.

15. The May 20, 2020 payment failed to cure Tenant's default.

16. By Notice to Tenant of Landlord's Failure to Receive Rent dated May 28, 2020 (the "Second RPL 235-e(d) Notice"), Landlord advised Tenant that it was in arrears to Landlord for the period from April 1, 2020 through and including May 20, 2020, in the amount of $197,971.58.

17. Tenant's failure to pay Minimum Rent and Additional Rent constitutes an Event of Default pursuant to Section 21(a) of Article 21 of the Lease.

18. As a result of Tenant's Event of Default under the Lease, Landlord served Tenant with a Seven (7) Day Notice of Termination dated May 28, 2020 (the "Termination Notice").

19. The Termination Notice advised Tenant that it was in arrears to Landlord for the period from April 1, 2020 through and including May 1, 2020, in the amount of $197,681.62 (the "Termination Arrears"), and informed Tenant that the Lease would terminate on June 10, 2020 (the "Termination Date") as a result thereof.

20. Pursuant to the Termination Notice, Tenant was required to quit, vacate and surrender possession of the Premises to Landlord on or before the Termination Date.

21. To date, Tenant has not paid any of the Termination Arrears.

22. Further, Tenant remains in possession of the Premises, past the Termination Date, without Landlord's consent.

## AS AND FOR A FIRST CAUSE OF ACTION
(Breach of Lease against Tenant)

23. Landlord repeats and realleges paragraphs 1 through 22 above as if set forth at length herein.

24. Tenant breached the Lease by failing to pay Minimum Rent and Additional Rent due pursuant to the Lease.

25. Landlord has complied with all of its obligations under the Lease.

26. Through the date of this Complaint, Tenant owes landlord Minimum Rent and Additional Rent in the amount of $328,097.00.

27. In addition, Landlord is entitled to damages resulting from the termination of the Lease.

28. Pursuant to Section 22(d) of Article 22 of the Lease, in the event Landlord elects to terminate the Lease, Landlord is entitled to:

    a. all rent that would have been due for the remainder of the Lease term, less any amounts that Tenant can prove were reasonably avoided or could have been reasonably avoided; and

    b. any amounts necessary to compensate Landlord for the detriment associated with Tenant's default.

29. By reason of the foregoing, Landlord is entitled to a money judgment against Tenant in an amount to be determined at trial, but not less than $10,607,604.00, plus interest.[2]

## AS AND FOR A SECOND CAUSE OF ACTION
(Attorneys' Fees Against Tenant)

30. Landlord repeats and realleges paragraphs 1 through 29 above as if set forth at length herein.

31. Article 41 of the Lease provides:

    If either Landlord or Tenant shall institute any action or proceeding against the other relating to any of the terms, covenants, conditions or provisions of this Lease, or there occurs any Event of Default by Tenant or default by Landlord, the unsuccessful party in such action or proceeding shall reimburse the successful party for reasonable attorney's fees and other costs and expenses incurred therein by the successful party, including fees, costs and expenses incurred in any appellate proceeding.

---

[2] Plaintiff hereby reserves its right to seek, *inter alia*, other amounts due under the Lease and/or damages.

32. Landlord has incurred and will continue to incur attorneys' fees, costs and expenses in connection with Tenant's breach of the Lease and this action.

33. By reason of the foregoing, Landlord is entitled to a money judgment against Tenant in an amount to be determined by the Court, plus interest.

**WHEREFORE**, Landlord demands judgment as follows:

A. On the first cause of action, a money judgment against Tenant, in an amount to be determined, but no less than $10,607,604.00, plus interest;

B. On the second cause of action, a money judgment against defendants in an amount to be determined, plus interest;

C. For such other and further relief that the Court deems just and proper.

Dated: New York, New York
June 11, 2020

**ROSENBERG & ESTIS, P.C.**
*Attorneys for Plaintiff*

By: _____
Bradley S. Silverbush
733 Third Avenue
New York, New York 10017
(212) 867-6000

## VERIFICATION

STATE OF NEW YORK          )
                           )  ss.:
COUNTY OF NEW YORK         )

MICHAEL SHAH, being duly sworn, deposes and says:

1. I am a member of plaintiff DELSHAH 60 Ninth LLC ("Plaintiff"), a New York limited liability company.

2. I have read the foregoing Verified Complaint and know the contents thereof; and the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

3. The source of my information and belief is the books and records of Plaintiff.

4. This verification is made by deponent because Plaintiff is a limited liability company and I am a member thereof.

_____
MICHAEL SHAH

Sworn to before me this
___ day of June, 2020

_____
Notary Public

BONNI LIPPMAN
NOTARY PUBLIC-STATE OF NEW YORK
No. 01LI6202911
Qualified in New York County
My Commission Expires 03-30-2021