UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                         :

DELSHAH 60 NINTH, LLC,                     :

                                   :          20-CV-5905 (JMF) (SLC)

                       Plaintiff,        :

                                   :

             -v-                    :          <u>ORDER ADOPTING IN</u>

                                   :          <u>PART AND MODIFYING</u>

FREE PEOPLE OF PA LLC,              :          <u>IN PART REPORT AND</u>

                                   :          <u>RECOMMENDATION</u>

                     Defendant.     :

                                   :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      This case, familiarity with which is presumed, is one of many between a landlord and

commercial tenant concerning unpaid rent from the first few months of the COVID-19

pandemic.  On October 18, 2021, each side — Plaintiff Delshah 60 Ninth, LLC ("Delshah") and

Defendant Free People of PA LLC ("Free People") — moved for summary judgment.  *See* ECF

Nos. 67, 72.  The Honorable Alison J. Nathan, to whom the case was then assigned, referred the

motions to Magistrate Judge Sarah L. Cave for a Report and Recommendation.  *See* ECF No. 79.

On June 29, 2022, after the case was reassigned to the undersigned (due to the elevation of Judge

Nathan to the Second Circuit), Magistrate Judge Cave issued a Report and Recommendation

("R&R") in which she recommended that the Court grant in part and deny in part Delshah's

motion and deny Free People's motion.  *See* ECF No. 114.  On July 13, 2022, Free People timely

filed objections to the R&R.  *See* ECF No. 115 ("Obj.").  On July 27, 2022, Delshah filed a

response to Free People's objections.  *See* ECF No. 117 ("Opp'n").

**STANDARD OF REVIEW**

      In reviewing a Report and Recommendation, a district court "may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28

1

U.S.C. § 636(b)(1)(C).  A district court "must determine *de novo* any part of the magistrate

judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); *see also United*

*States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).  To accept those portions of the report to

which no timely objection has been made, however, a district court need satisfy itself only that

there is no clear error on the face of the record.  *See, e.g.*, *Wilds v. United Parcel Serv.*, 262 F.

Supp. 2d 163, 169 (S.D.N.Y. 2003).  This clearly erroneous standard also applies when a party

makes only conclusory or general objections, or simply reiterates his or her original arguments.

*See, e.g.*, *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008).

## DISCUSSION

Free People filed objections to most, but not all, of the R&R's conclusions.  Assuming

without deciding that the *de novo* standard applies to all of these objections, the Court concludes

that the R&R is substantially correct and adopts its primary conclusions for the reasons that

follow.  That said, Magistrate Judge Cave did not rule on a handful of issues that, in the Court's

judgment, are ripe for decision.  Accordingly, for reasons that the Court will explain, the Court

modifies the R&R in part as well.  The net result is Delshah is entitled to judgment on liability

with an inquest (or trial) warranted as to damages.

The Court will address each of Free People's objections in turn.

## A.  Delshah's Breach-of-Contract Claim

First, Magistrate Judge Cave correctly granted summary judgment in favor of Delshah on

its breach-of-contract claim.  Delshah's claim rests on Free People's undisputed failure to timely

pay rent after March 2020.  *See* R&R 23; ECF No. 69 ("Pl.'s Mem."), at 15; ECF No. 73

("Def.'s Mem."), at 11.  Free People argues that it had no obligation to pay rent between March

23, 2020, and June 22, 2020, because the leased premises were subject to a "taking" within the

meaning of the parties' lease.  ECF No. 80 ("Def.'s Opp'n"), at 8-14; *see also* R&R 23.  In

relevant part, the parties' lease states that a "taking" occurs "if Tenant is denied or deprived of

either the use, occupancy and/or enjoyment of the Leased Space and/or the ability to operate its

business thereon or therefrom by action or decree of any lawful power or authority," at which

point, "the Rent due hereunder shall be reduced proportionately by the square footage of the

Leased Space that is so affected."  ECF No. 75-1 ("Lease"), ¶ 20(a); R&R 6-7.  According to

Free People, the executive orders temporarily forbidding in-person work and limiting customer

capacity on account of COVID-19, *see* ECF Nos. 67-11, 67-12, effected a "taking," *see* Def.'s

Opp'n. 10.

      The R&R concludes that, as limiting as they were, the executive orders did not deprive

Free People of all use, occupancy, or enjoyment of the leased space.  R&R 31.  The lease defines

the permitted uses of the premises as "[a]ny general retail use . . . together with ancillary office

and storage use."  Lease ¶ Q; R&R 28.  As the R&R states, "general retail use" implies a broad,

comprehensive use of the premises, not limited to in-person retail sales.  R&R 29; Obj. 15.  It

follows that Free People never fully lost the "use" of the leased premises.  For example, Free

People stored its merchandise in the leased space for the entire period that the executive orders

were in effect, *see* ECF No. 81 ("SOF"), ¶ 87; Free People received online orders for

merchandise throughout that period, *id.* ¶ 69; R&R 12; although Free People's employees were

unable to enter the leased space for seventeen days (from March 20, 2020, to April 9, 2020), they

used the space to fulfil the backlog of online orders once they were able to return, R&R 12; SOF

¶¶ 81, 85; and Free People was able to offer curbside pickup outside the leased space as of June

8, 2020, R&R 13; SOF ¶¶ 107-08, 121.  In short, because Free People was never deprived of all

use or occupancy of the leased space, there was no taking, and Free People remained obligated to

pay rent.[1]  When Free People ceased making timely rent payments after March 2020, it breached

the parties' lease.  Delshah is therefore entitled to summary judgment on its breach-of-contract

claim.[2]

Relatedly, the R&R recommends that summary judgment be granted to Delshah

dismissing two of Free People's common law defenses to the breach-of-contract claim, namely

frustration and impossibility.  R&R 35-38.  Free People does not object to this portion of the

R&R and, accordingly, clear error review should govern.  But no matter: The R&R is correct.

*Gap Inc. v. Ponte Gadea N.Y. LLC*, 524 F. Supp. 3d 224 (S.D.N.Y. 2021), one of the many

COVID-19-related cases decided in the last two years, is instructive.  There, the court rejected

the tenant's frustration and impossibility defenses because the pandemic and resulting executive

orders did not render the tenant wholly unable to operate a business from the leased premises.

*Id.* at 235-37.  "Adverse financial consequences," the court explained, do not constitute

"frustration of purpose"; nor do they render performance of the lease "objectively impossible."

*Id.* at 236-37.  That logic applies here.  Although the pandemic and executive orders made

performance of the lease "more burdensome," and Free People's business was indisputably "less

profitable," *see* R&R 37-38, that does not excuse Free People's performance under the doctrines

of frustration and impossibility.  Accordingly, Delshah is entitled to summary judgment

dismissing Free People's affirmative defenses of frustration and impossibility.

---

[1]     The R&R analogizes the definition of a "taking" as that term is used in the lease to the concept of a "taking" in constitutional law.  R&R 32-35.  The analysis of constitutional takings certainly reinforces the conclusion that the executive orders did not effect a taking of Free People's leased space within the meaning of the lease, but it is not necessary to the Court's conclusion.  Thus, the Court need not and does not decide whether that analysis was appropriate.

[2]     For the same reasons, Free People's next claim, that its rent obligation was excused because conditions precedent were not met, must fail.  *See* R&R 41.  Moreover, Free People lodges no objection to that portion of the R&R.

**B.  Free People's Breach-of-Lease Claim**

Next, Free People objects to the R&R with respect to its counterclaims for breach of the lease.  Obj. 20-21.  Free People alleges that Delshah breached the lease by (1) demanding rent payment when none was due; (2) misapplying a partial rent payment; and (3) wrongfully terminating the parties' lease.  R&R 38.  The R&R recommended dismissal of these counterclaims on the ground that Free People failed to meet a condition precedent, namely providing notice and an opportunity to cure.  *Id.*; *see also* Lease ¶ 23 (defining default as the landlord's failure "to keep, observe or perform any of its obligations . . . within thirty (30) days after Landlord's receipt of notice of nonperformance from Tenant").  The lease states that, "If Landlord fails to cure such default within the applicable time period, then Tenant may elect, *in addition to any and all other rights and remedies available to Tenant . . . at law or in equity*, to cure such default." Lease ¶ 23 (emphasis added).

Given the plain language of the lease and the undisputed fact that Free People provided no notice to Delshah of any alleged breach, *see* Obj. 19; Opp'n 13; SOF ¶ 24, Magistrate Judge Cave's conclusion is surely correct.  But in any event, Free People's breach-of-lease counterclaims fail on the merits.  As the R&R correctly concludes, because there was no taking, Free People's obligation to pay rent continued throughout the pandemic.  R&R 40.  Delshah's demands for rent were therefore permissible under the lease, as was Delshah's termination of the lease following Free People's undisputed failure to pay rent.  *Id.*  Free People's argument that Delshah misapplied a partial rent payment is equally unavailing.  The lease provides that any partial payments by the tenant will generally by applied to the outstanding balance, unless the "payment is accompanied by a notice" detailing what the payment should cover.  *Id.*; Lease ¶ 52. Free People made a partial rent payment on May 15, 2020, by wire transfer and provided no

instructions with the transfer.  R&R 16; SOF ¶ 55.  Under the terms of the lease, therefore,

Delshah correctly applied the partial rent payment to the outstanding balance.

## C.  Free People's Unjust Enrichment Claim

Finally, Free People objects to the R&R's conclusion that its counterclaim for unjust

enrichment should be dismissed as duplicative.  *See* Obj. 22-23; R&R 41-44.[3]  The New York

Court of Appeals has explained that "[t]he theory of unjust enrichment lies as a quasi-contract

claim and contemplates an obligation imposed by equity to prevent injustice, in the absence of an

actual agreement between the parties."  *Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511,

516 (2012) (internal quotation marks omitted).  Thus, "[a]n unjust enrichment claim is not

available where it simply duplicates, or replaces, a conventional contract . . . claim."  *Corsello v.*

*Verizon N.Y., Inc.*, 18 N.Y.3d 777, 791 (2012); *see also Clark-Fitzpatrick, Inc. v. Long Island*

*R.R. Co.*, 70 N.Y.2d 382, 388 (1987) ("The existence of a valid and enforceable written contract

governing a particular subject matter ordinarily precludes recovery in quasi contract for events

arising out of the same subject matter.").

In light of this well-established case law, Magistrate Judge Cave properly concluded that

Free People's counterclaim for unjust enrichment fails as a matter of law.  R&R 44.  The

counterclaim is based on two rent payments that Free People inadvertently made in August and

September 2020, after it vacated the premises and Delshah terminated the parties' lease.  Obj. 21;

Opp'n 18.  But the parties' lease expressly states that, following termination, Delshah was

---

[3]     The relevant portion of the R&R recommended dismissal of not only Free People's
unjust enrichment claim, but also its claim for "money had and received."  *See* R&R 41-44.  Free
People lodges no objection to the R&R's recommendation as to the latter claim.  In any event,
the elements of the two claims are substantially the same, *compare Giordano v. Thomson*, 564
F.3d 164, 170 (2d Cir. 2009) (unjust enrichment), *with Aaron Ferer & Sons Ltd. v. Chase
Manhattan Bank, Nat. Ass'n*, 731 F.2d 112, 125-26 (2d Cir. 1984) (money had and received),
which makes a separate discussion unnecessary.

6

entitled to treat those payments as rent.  *See* Lease ¶ 22(c) ("In the event of any termination of this Lease . . . by reason of an Event of Default [by the tenant], as liquidated and agreed to damages . . . Tenant agrees to pay the Rent that would be payable under this Lease."); *id.* ¶ 22(d) (allowing the landlord to recover the worth of any unpaid rent due post-termination as a lump sum).  The cases on which Free People relies to argue otherwise are inapposite.  In each, courts declined to dismiss quasi-contract claims based on events that occurred after the *expiration* of the contract.  Obj. 22-23; *see, e.g.*, *Kropschot Fin. Servs., Inc. v. Balboa Cap. Corp.*, No. 11-CV-8609 (SAS), 2012 WL 1870697, at *5 (S.D.N.Y. May 21, 2012); *Cohen v. LFT Real Est. Co.*, No. 08-CV-4591 (JTB) (ARL), 2009 WL 1373542, at *5-6 (E.D.N.Y. May 15, 2009); *Forman v. Guardian Life Ins. Co. of Am.*, 76 A.D.3d 886, 888 (N.Y. App. Div. 1st Dept. 2010).  But the *expiration* of a contract is distinct from its *termination* after a party defaults.  The lease provisions governing post-termination rent apply and, thus, Free People has no remedy in unjust enrichment.

## D.  Free People's Remaining Affirmative Defenses

That resolves Free People's objections to the R&R.  But one issue remains.  Free People argues that the R&R does not address its "defenses based on offset, failure of consideration, illegality, unconscionability or mistake"; its "counterclaims for declaratory relief for no rent owed, frustration of purpose and impossibility of performance"; or Delshah's "defenses based on estoppel, waiver, voluntary payment, discharge for value or notice under [a separate agreement]."  Obj. 24.[4]  For its part, Delshah does not dispute that the R&R fails to address these issues.  Nevertheless, it contends that the Court may address them here.  *See* Opp'n 21-22.

---

[4]     Free People omits some affirmative defenses that it had alleged in its answer, namely failure to mitigate, reformation, no duty owed to Delshah, lack of damages, performance excused because of actions of Delshah or third parties, force majeure, and collateral source for monetary

The Court agrees with Delshah.  To begin, the logic of the R&R, as approved by the Court here, dictates the outcome for most of what Free People lists as remaining unresolved. That is, Free People is not entitled to offset any of its damages based on the rent it paid because there was no taking of the leased space; Free People cannot claim the purpose, object, or performance of the lease became illegal because it remained legal to operate a retail store from the leased premises; Free People's counterclaims for no rent owed, frustration of purpose, and impossibility of performance fail as a matter of law for the reasons discussed above; and Delshah's defenses of estoppel, waiver, voluntary payment, discharge for value, and notice are moot.  That leaves Free People's affirmative defenses of failure of consideration, unconscionability, and mistake, all of which Delshah briefed in its motion for summary judgment, *see* Pl.'s Mem. 35-38, making them properly before the Court here.  The Court will thus address them in turn.

First, failure of consideration applies only when "the object of the parties in making the contract" has been "defeated."  *Gap, Inc.*, 524 F. Supp. 3d at 238 (quoting *Callahan v. Powers*, 199 N.Y. 268, 284 (1910)).  In *Gap*, the Court rejected a failure of consideration defense because, despite the pandemic-related restrictions on retail, the tenant continued to receive consideration — namely, the physical retail premises.  *Id.*  So too here, as discussed above, Free People continued to use and occupy the leased space from March through June 2020, and therefore continued to receive consideration.

---

recovery.  *See* ECF No. 25, at 17-24.  Accordingly, these affirmative defenses are deemed abandoned.  *Summit Health Inc. v. APS Healthcare Bethesda, Inc.*, 993 F. Supp. 2d 379, 398 (S.D.N.Y. 2014) (deeming an affirmative defense abandoned after the defendant failed to respond to plaintiff's motion seeking its dismissal).

Next, the doctrine of mistake is also inapplicable here.  Free People cannot rely on a mistaken prediction about the future to support a defense of mutual mistake.  *See Gap*, 524 F. Supp. 3d at 239; *accord Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990).  And a defense of unilateral mistake requires fraud, which Free People does not allege.  *See, e.g.*, *Amara v. CIGNA Corp.*, 775 F.3d 510, 525 (2d Cir. 2014) ("A contract may be reformed . . . where one party is mistaken and the other commits fraud or engages in inequitable conduct."); *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 585 (2d Cir. 2005) ("[A] party's unilateral mistake will not provide a basis for recission unless it is accompanied by some fraud committed by the other contracting party.").

Finally, the doctrine of unconscionability provides no relief to Free People either.  Unconscionability "seeks to prevent sophisticated parties with grossly unequal bargaining power from taking advantage of less sophisticated parties" and applies only to terms that are "both procedurally and substantively unconscionable when made."  *NML Cap. v. Republic of Argentina*, 621 F.3d 230, 237 (2d Cir. 2010) (internal quotation marks omitted).  Here, there is no dispute that both parties are sophisticated, and Free People makes no specific allegations that the terms of the lease were procedurally or substantively unconscionable when made.

## CONCLUSION

For the reasons set forth above, the Court adopts the R&R in substantial part and modifies it in part, namely by dismissing Free People's remaining affirmative defenses and counterclaims.  Accordingly, Delshah's motion for summary judgment is GRANTED on the breach-of-contract claims and on all of Free People's affirmative defenses, and Free People's cross-motion for summary judgment is DENIED.  The matter is referred to Magistrate Judge Cave for an inquest on damages, including attorneys' fees and costs.  *See* R&R 44-45.

The Clerk of Court is directed to terminate ECF Nos. 67 and 72.

SO ORDERED.

Dated: August 17, 2022
       New York, New York

_____
JESSE M. FURMAN
United States District Judge