UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DELSHAH 60 NINTH, LLC,

                              Plaintiff,

          -v-

FREE PEOPLE OF PA LLC,

                              Defendant.

CIVIL ACTION NO. 20 Civ. 5905 (JMF) (SLC)

**REPORT AND RECOMMENDATION**

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE JESSE M. FURMAN**, United States District Judge:

## I. INTRODUCTION

In the latest chapter of this litigation between a landlord, Plaintiff Delshah 60 Ninth, LLC ("Delshah"), and its commercial tenant, Defendant Free People of PA LLC ("Free People"), concerning unpaid rent during the COVID-19 pandemic, now before the Court is Delshah's motion for attorney's fees and costs following entry of a $6.7 million judgment in its favor. (ECF No. 225 (the "Fee Motion")), which the Honorable Jesse M. Furman has referred for this report and recommendation. (ECF No. 199). For the reasons set forth below, we respectfully recommend that the Fee Motion be GRANTED IN PART and DENIED IN PART and Delshah be awarded $672,644.08 in attorneys' fees, $18,588.40 in litigation costs, and $96,885.00 in expert costs.

## II. BACKGROUND

### A. Factual Background

We presume the parties' familiarity with the factual background of and defined terms used in this action, which we incorporate by reference from prior decisions. See Delshah 60 Ninth, LLC v. Free People of PA LLC, No. 20 Civ. 5905 (JMF) (SLC), 2024 WL 1120388 (S.D.N.Y.

Mar. 13, 2024) ("<u>Delshah IV</u>"), <u>adopted by</u>, 2024 WL 4648014 (S.D.N.Y. Nov. 1, 2024) ("<u>Delshah V</u>"); Delshah 60 Ninth, LLC v. Free People of PA LLC, No. 20 Civ. 5905 (JMF) (SLC), 2022 WL 4228213 (S.D.N.Y. June 29, 2022) ("<u>Delshah I</u>"), <u>adopted in part and modified in part</u>, 2022 WL 3536133 (S.D.N.Y. Aug. 17, 2022) ("<u>Delshah II</u>"), <u>amended on reconsideration in part</u>, 2022 WL 5108049 (S.D.N.Y. Oct. 4, 2022) ("<u>Delshah III</u>"); <u>see also</u> Delshah 60 Ninth LLC v. Free People of PA LLC, No. 20 Civ. 5905 (JMF), 2024 WL 5107364 (S.D.N.Y. Dec. 13, 2024) (addressing proposed judgment).[1]  We set forth only the additional facts necessary to analyze the Fee Motion.

**1.  The Lease**

Three provisions of the Lease are relevant to the Fee Motion.  (ECF Nos. 225-1 ¶¶ 3–5; 226 at 10; 231 at 6).  First, section 41 of the Lease provides:

> [41]  **ATTORNEY'S FEES**.  If either Landlord or Tenant shall institute any action or proceeding against the other relating to any of the terms, covenants, conditions or provisions of this Lease, or there occurs any Event of Default by Tenant or default by Landlord, the unsuccessful party in such action or proceeding shall reimburse the successful party for reasonable attorney's fees and other costs and expenses incurred therein by the successful party, including fees, costs and expenses incurred in any appellate proceeding.

(ECF No. 75-1 at 44 § 41 ("Section 41")).

Second, Delshah references the indemnification provision (ECF No. 226 at 21–25)—section 16 of the Lease—which provides in relevant part:

> (a) Tenant agrees to indemnify, defend and hold harmless Landlord during the Initial Lease Term and all Extension Term(s) against and from all claims, losses, liabilities, costs, damages or expenses (including reasonable attorney's, consultant's and expert fees and expenses actually incurred) directly or indirectly arising out of or attributable to any injury to any person (including death) or damage to any property that arises from Tenant's act or omission, negligent or intentional, or from the failure of Tenant to keep, observe, and perform any of the terms, covenants, conditions and provisions of this Lease to be kept, observed or

---

[1] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

performed by Tenant, unless such injury or damage is caused by the act or omission, negligent or intentional, of Landlord, its agents, contractors, servants or employees, or is covered by insurance required to be maintained by Tenant hereunder or that arises out of or is attributable to the failure of Landlord to keep, observe, or perform any of the terms, covenants, conditions or provisions of this Lease to be kept, observed or performed by Landlord. . . .

(ECF No. 75-1 at 29 § 16(a) ("Section 16(a)")).

Third, Delshah invokes section 22(a)(ii), which provides that in the event of Free People's default under the Lease, Delshah could

(ii) Exercise any other remedy provided in this Lease, at Law or in equity and/or perform the same for the account of Tenant, and if Landlord, in connection therewith, or in connection with any Event of Default by Tenant, makes any expenditures or incurs any obligations for the payment of money, including reasonable attorneys' fees and disbursements, such sums so paid or obligations incurred shall be deemed to be Additional Rent hereunder, and shall be paid by Tenant to Landlord, together with interest at the Default Rate, within thirty (30) days of rendition of any bill or statement therefor, and if the Term of this Lease shall have expired at the time of the making of such expenditures or incurring such obligations, such sums shall be recoverable by Landlord as damages[.]

(ECF No. 75-1 at 35 § 22(a)(ii) ("Section 22(a)(ii)")).

## 2. Delshah's Attorneys' Fees and Costs

Three law firms rendered services to Delshah in this action, Woods Oviatt Gilman LLP ("Woods"), Rosenberg & Estis, PC ("Rosenberg"), and Duke Holzman Photiadis & Gresens LLP ("Duke", with Woods and Rosenberg, the "Firms").  (ECF Nos. 225-1 ¶ 6; 225-2; 225-5; 225-7; 226 at 7).

The three firms recorded the following hours, hourly rates, and disbursements:[2]

|  | Woods Oviatt | Rosenberg Estis | Duke Holzman |
|---|---|---|---|
| Aggregate Fees | $675,057.50[3] | $122,085.50 | $43,662.10[4] |
| Aggregate Hours | 2,113.90 | 204.4 | 162.6 |
| Hourly Rates | $295-445 | $285-825 | $275-325 |
| Disbursements | $14,879.16 | $1,579.49 | $2,129.75 |

The legal services Woods Oviatt provided to Delshah included advice concerning: the effect of COVID-19 on tenants' obligations; the impact of the Governor's Executive Orders; the interpretation of the Lease; discovery; expert reports; motion practice, including summary judgment and the Fee Motion; damages; the Court's orders and reports and recommendations; and the Judgment.  (ECF No. 225-1 ¶ 40; see ECF No. 225-2).  The legal services Rosenberg provided to Delshah included advice concerning: the parties' rights and obligations under the Lease; preparation, service, and filing of pleadings; discovery; summary judgment motions; expert witnesses; and damages.  (ECF No. 225-4 ¶ 8; see ECF No. 225-5).  The legal services Duke provided to Delshah included: preparing for, taking, and defending depositions; drafting responses to discovery requests; revising expert reports; preparing and responding to summary judgment motions; and revising submissions concerning damages.  (ECF No. 225-6 ¶ 4; see ECF No. 225-7).

---

[2] See ECF No. 226 at 7.

[3] Delshah's initial aggregate fee request for Woods was $664,796.50, which included $66,600.50 in fees for services performed by Woods' paralegal, Lea A. Herald.  (ECF Nos. 225-1 ¶¶ 37-39; 226 at 7–8).  Taking into account, however, (1) a reduction of $12,114.00, to account for the error that Free People pointed out and Woods acknowledged in the billing rate for one of its attorneys, Bernard Schenkler, (ECF Nos. 231 at 9; 234 at 9–10); and (2) inclusion of an additional $22,375.00 for time Woods incurred in January 2025—67.5 hours—that was not recorded in the initial billing records, the revised aggregate fee request for Woods is $675,057.50.  (ECF No. 228; see ECF No. 225-2).

[4] This amount reflects Duke's write-off of $2,890.90.  (ECF No. 226 at 7).

The Firms also seek reimbursement of their litigation costs.  (ECF Nos. 225 at 1; 226 at 7).
Delshah has submitted documentation supporting the nature and amount of these costs, which
include: e-discovery vendor services; court reporting services; telephone and conference calls;
online research services; overnight delivery services; PACER fees; travel; postage; court filing
fees; service of process; word processing; and photocopying.  (ECF Nos. 225-2 at 1; 225-4 at 1;
225-5 at 1; 237; 237-1–237-9).[5]  Free People is not challenging these costs.  (ECF No. 231 at 15
n.2).

Finally, Delshah seeks reimbursement for the fees for its expert, Sharon Locatell ("Ms.
Locatell"), in the amount of $102,268.50.  (ECF Nos. 225-1 ¶¶ 45–51; 225-8; 225-9; 225-10; 226
at 8, 25–28).  Ms. Locatell is a state-certified appraiser licensed in New York, New Jersey, and
Connecticut.  (ECF No. 225-8 ¶ 3).  She earned her bachelor's degree from Gettysburg College
and her master's degree in real estate and urban analysis from the University of Florida.  (Id.)
She has "over 32 years of experience in preparing and reviewing consulting and appraisal reports
covering all property types" and prepares and reviews "hundreds of reports each year, primarily
involving New York City commercial real estate."  (Id. ¶ 4).  During her career, she has performed
real estate appraisals and consulting work for "dozens of Manhattan lessors and lessees of
commercial property."  (Id. ¶ 5)  Ms. Locatell prepared expert reports setting forth her opinion
regarding the calculation of damages to which Delshah was entitled under the Lease, provided
deposition testimony, and reviewed and commented on Free People's expert's reports.  (Id. ¶ 6).
Ms. Locatell billed her time at an hourly rate of $950 and incurred 107.65 hours, for which she

---

[5] At the Court's direction, Delshah provided a supplemental declaration attaching documentation of these
costs.  (ECF Nos. 236; 237; 237-1–237-9).

has provided time records containing descriptions of her expert services.  (ECF No. 225-8 ¶ 2; see ECF No. 225-10).

**B.  Procedural Background**

On June 29, 2022, in Delshah I, we recommended that summary judgment be granted in favor of Delshah on the breach of contract claims and on Free People's taking, impossibility, and frustration affirmative defenses, and that Delshah's request for attorneys' fees and costs be deferred pending a determination of Delshah's damages.  2022 WL 4228213, at *21.  On August 17, 2022, Judge Furman issued Delshah II, holding that Delshah I was "substantially correct and adopt[ing] its primary conclusions[,]" and rejecting Free People's objections concerning Delshah's breach of contract claim and Free People's breach of contract, breach of lease, and unjust enrichment claims.  Delshah II, 2022 WL 3536133, at *1–4.  Judge Furman also rejected Free People's defenses of failure of consideration, mistake, and unconscionability, and thus granted summary judgment in Delshah's favor on "all of Free People's affirmative defenses[,]" and then referred the matter to the undersigned for an inquest on damages.  Id. at *5.  On Free People's subsequent motion for reconsideration, Judge Furman "deemed reinstated" Free People's "failure-to-mitigate defense[,]" noting that this defense "is relevant only to damages" and anticipating that "mitigation can and will be addressed by Magistrate Judge Cave as part of the inquest given the terms of the parties' [L]ease."  Delshah III, 2022 WL 5108049, at *1.

Following a lengthy inquest proceeding, on March 13, 2024, in Delshah IV, we recommended that Delshah be awarded damages in the amount of $5,956,144.10 plus pre- and post-judgment interest and that the question of attorneys' fees and costs be deferred until after Judge Furman's decision on damages.  2024 WL 1120388, at *1, *16.  On November 1, 2024,

Judge Furman considered and rejected Free People's objections to <u>Delshah IV</u>, adopted our recommendations as to damages, directed the parties to submit a proposed judgment in accordance with his rulings, and referred the question "whether and to what extent to award attorney's fees and costs." <u>Delshah V</u>, 2024 WL 4648014, at *6. After the parties were unable to agree on the form of the judgment, Judge Furman received further briefing, rejected Delshah's arguments concerning the applicable default rate of interest and late fee and how they should be calculated, agreed that Delshah was entitled to prejudgment statutory interest on re-leasing expenses, and directed the parties to submit a proposed judgment. <u>Delshah VI</u>, 2024 WL 5107364, at *1–3. On December 20, 2024, Judge Furman entered judgment in favor of Delshah in the total amount of $6,707,916.84 plus post-judgment interest under 28 U.S.C. § 1961 and permitted Delshah to file the Fee Motion. (ECF No. 215 (the "Judgment")). Free People has appealed from the Judgment, and Delshah has cross-appealed. (ECF Nos. 218; 223).

The parties' efforts to reach a compromise on Delshah's request for attorneys' fees and costs came to naught. (ECF min. entries dated Jan. 27, 2025 & Mar. 6, 2025). On February 3, 2025, Delshah filed the Fee Motion and supporting declarations and exhibits. (ECF Nos. 225–28). In the Fee Motion, Delshah seeks attorneys' fees for the services rendered and costs incurred by the Firms as well as Locatell's fees. (ECF No. 226 at 7–8). On March 5, 2025, Free People filed its opposition. (ECF No. 231). On March 20, 2025, Delshah filed its reply. (ECF No. 234).

### III. <u>LEGAL STANDARD</u>[6]

"Under the 'American Rule,' . . . attorneys' fees are not recoverable 'unless an award is authorized by agreement between the parties, statute[,] or court rule.'" <u>Magid v. Waldman</u>, 202

---

[6] The parties agree that New York law applies to the Fee Motion. (ECF Nos. 226 at 10–11; 231 at 7).

WL 4891218, at *6 (S.D.N.Y. Aug. 19, 2020) (quoting Hooper Assocs., Ltd. v. AGS Comput., Inc., 74 N.Y.2d 487, 491 (1989)). "Under New York law, a prevailing party may recover attorney's fees from the losing party where authorized by . . . agreement." Zero Carbon Holdings, LLC v. Aspiration Ptrs., Inc., No. 23 Civ. 5262 (LJL), 2024 WL 3409278, at *2 (S.D.N.Y. July 15, 2024); see N.Y.C. Dist. Council of Carpenters v. JFD Sales Consulting Serv. Corp., No. 17 Civ. 3733 (LGS), 2017 WL 4736742, at *2 (S.D.N.Y. Oct. 19, 2017) (recognizing that, under New York Law "a contractual provision for the payment of [attorneys'] fees provides a basis to award them"). Absent a legal duty to indemnify the prevailing party for attorneys' fees, "a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed[.]" Hooper Assocs., 74 N.Y.2d at 491. As the New York Court of Appeals has explained, "[i]nasmuch as a promise by one party to a contract to indemnify the other for attorney's fees incurred in litigation between them is contrary to the well-understood rule that parties are responsible for their own attorney's fees, the court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise[.]" Id. "To ensure that fees are not awarded in the absence of an express agreement, the courts have interpreted such provisions strictly." Zero Carbon, 2024 WL 3409278, at *2 (cleaned up).

Where a prevailing party is entitled to recover attorneys' fees, "[c]ourts in the Second Circuit use the familiar 'lodestar' method of calculating reasonable attorney's fees—multiplying the number of hours reasonably expended by a reasonable hourly rate.'" Adusumelli v. Steiner, Nos. 08 Civ. 6932 (JMF), et al., 2013 WL 1285260, at *2 (S.D.N.Y. Mar. 28, 2013) (citing Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011)); see McGrath v. Toys "R" Us, Inc., 3 N.Y.2d

421, 430 (2004) (explaining that New York courts apply lodestar method).  While the lodestar method is "presumptively reasonable," a court "may adjust the lodestar when it 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'"  Millea, 658 F.3d at 166–67 (quoting Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542 (2010)); see Lancer Indem. Co. v. JKH Realty Grp., LLC, 127 A.D.3d 1035, 1036 (2d Dep't 2015) (discussing factors New York courts consider to modify lodestar amount).   "The party seeking fees bears the burden of demonstrating that its requested hours and hourly rates are reasonable, and must provide a court with sufficient information to assess the fee application." Zero Carbon, 2024 WL 3409278, at *2.   The court's objective is to arrive at "an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." Perdue, 559 U.S. at 551.

An application for attorneys' fees and costs should be supported by "contemporaneous time records" relaying the rates charged and hours worked by each attorney.  N.Y. State Ass'n for Retarded Child., Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983).  The attorneys "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983); see Themis Cap. v. Dem. Rep. Congo, No. 09 Civ. 1652 (PAE), 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014) (reducing hours by 20% for "impermissibly broad" block billing).  A court should look at the "nature of the legal matter and context of the fee award in considering the reasonable rate and reasonable time spent on the matter." Tessemae's LLC v. Atlantis Cap. LLC, No. 18 Civ. 4902 (KHP), 2019 WL 2635956, at *3 (S.D.N.Y. June 27, 2019).

To determine the hourly rate, a court considers "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr., 652 F.3d 277, 289 (2d Cir. 2011). In addition, the Second Circuit has a "forum rule" requiring the use of "hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." Id. The determination of the reasonable hourly rate is aided by the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). The court may adjust base hourly rates to account for case specific variables such as the complexity of the issues and attorneys' experiences. See MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kowancki LLC, No. 16 Civ. 8103 (LGS), 2017 WL 1194372, at *3 (S.D.N.Y. Mar. 30, 2017) (adjusting fees based on case specific matters).

To determine the reasonable number of hours worked, the court should strike a balance "between principles of thoroughness and efficiency." LCS Grp. LLC v. Shire LLC, 383 F. Supp. 3d 274, 280 (S.D.N.Y. 2019). The Court must examine the amount of time spent on each task and decide "how much of that time was reasonably expended given the scope and complexity of the litigation." Pichardo v. C.R. Bard, Inc., No. 09 Civ. 7653 (SHS), 2015 WL 13784565, at *4 (S.D.N.Y. Jan. 26, 2015). The Court should also consider the number of attorneys involved. Tessemae's LLC, 2019 WL 2635956, at *5. The Court can rely on "its own familiarity with the case, as well as its experience with the parties' evidentiary submissions and arguments." Kreisler, 2013 WL 3965247, at *3. Time spent preparing a fee application may be awarded. See Dorchester Fin. Holdings Corp. v. Banco BRJ, S.A., No. 11 Civ. 1529 (KMW) (KNF), 2015 WL 1062327, at *3

(S.D.N.Y. Mar. 3, 2015). The court may reduce the hours spent on the litigation to exclude excessive, redundant, or otherwise unnecessary time. Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (citing Hensley, 461 U.S. at 434); see LCS Grp. LLC, 383 F. Supp. 3d at 281 ("A court may apply an across-the-board reduction to effectuate the reasonable imposition of fees."); MSC Mediterranean Shipping Co. Holding S.A., 2017 WL 1194372, at *3 (reducing fees for an unopposed motion for default judgment in a breach of contract case; excluding a senior partner's time because "the matter did not warrant the involvement of two senior partners"; and cutting paralegal's time in half); see also Pichardo, 2015 WL 13784565, at *7 (reducing attorneys' hours by forty percent because the recorded time addressed only one relevant issue).

Analysis of a request for attorneys' fees "'should not result in a second major litigation.'" Hensley, 461 U.S. at 437. Trial courts are neither requested nor expected to "become green-eyeshade accountants[,]" but rather to endeavor "to do rough justice, not to achieve auditing perfection." Id.; see Marion S. Mishkin L. Off. v. Lopalo, 767 F.3d 144, 150 (2d Cir. 2014) (explaining that court "is not obligated to undertake a line-by-line review of [an] extensive fee application"). Trial courts may appropriately "take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." Fox v. Vice, 563 U.S. 826, 838 (2011). Ultimately, "[t]he determination of reasonable attorneys' fees is left to the sound discretion of the trial court." Zero Carbon, 2024 WL 3409278, at *4 (cleaned up); accord Vincent v. Comm'r of Soc. Sec., 651 F.3d 299, 307 (2d Cir. 2011).

## IV. <u>DISCUSSION</u>

Free People acknowledges that Delshah is a "prevailing party" entitled to recover its reasonable attorneys' fees and costs under the Lease and does not dispute that the hourly rates

the Firms charged were reasonable, so we do not analyze those two issues further.[7]  (See ECF No. 231 at 5, 13).  Free People does: (i) contest the reasonableness of the number of hours the Firms expended; (ii) argue that the attorneys' fees award should be reduced commensurate with Delshah's "limited" success in this action; and (iii) object to Locatell's fees altogether, and therefore contends that Delshah should be awarded no more than $479,766.99 in attorneys' fees and $18,588.40 in costs.  (ECF No. 231 at 5, 8-17).  We address each of the three issues that Free People has raised.

### A.  Attorneys' Fees

#### 1.  Reasonableness of Hours Expended

Free People argues that the number of hours for which Delshah seeks reimbursement is excessive because (i) the Firms spent too much time drafting the amended complaint and drafting and responding to discovery demands and (ii) the Firms engaged in "block billing" that precludes a finding of reasonableness.  (ECF No. 231 at 8-13).  For the reasons explained below, we respectfully recommend a modest reduction to the Firms' hours to address these concerns.

#### a.  Drafting Pleadings and Discovery Demands/Responses

Free People contends that the more than 48.5 hours that three attorneys and one paralegal from two of the Firms expended in amending Delshah's complaint reflects "inefficiency and, no doubt, duplicative work[,]" and is therefore unreasonable.  (ECF No. 231 at 8).  Free People characterizes the changes between the Complaint and Amended Complaint as "largely

---

[7] As set forth in note 3, supra, Free People's only dispute with the Firms' hourly rates is the acknowledged error in Schenkler's hourly rate, for which we have already reduced Woods' requested amount of fees. (ECF No. 231 at 9).

stylistic rather than substantive." (Id.)  Similarly, Free People contends that the more than thirty-nine hours the Firms billed drafting discovery requests and responses is unreasonable.  (Id. at 8–9).

Delshah points out that its June 2020 Complaint against Free People in New York State Supreme Court asserted only claims for non-payment of rent and attorneys' fees, while the Amended Complaint filed in this Court in September 2020 sought both damages and declaratory relief and addressed Free People's additional rent payments, taking defense, and counterclaim. (ECF No. 234 at 9 n.1).  Delshah further argues that in a "multi-million dollar dispute" such as this one, the time the Firms incurred addressing "exceedingly difficult questions" was not "excessive." (Id. at 9).  Delshah does not specifically address Free People's criticism concerning the time spent on discovery requests and responses.

Delshah's Complaint was eight pages and contained two causes of action, while the Amended Complaint was slightly longer at thirteen pages, contained two causes of action that differ stylistically from the Complaint, contained an updated description of events over the summer of 2020, and addressed Free People's taking argument.  (Compare ECF No. 1-1, with ECF No. 12).  While the issues concerning interpretation of certain provisions the Lease became complex, as evidenced in the various decisions by Judge Furman and the undersigned, see § II.B., supra, Delshah framed the case in both the Complaint and the Amended Complaint as a straightforward breach-of-contract dispute:  Delshah claimed that the Lease required Free People to pay rent throughout the pandemic, Free People did not do so, and thus, Free People breached the Lease.  (See ECF Nos. 1-1 ¶¶ 24–27 (alleging that Free People "breached the Lease by failing to pay Minimum Rent and Additional Rent due pursuant to the Lease" and Delshah was

entitled to damages); 12 ¶¶ 61, 63 (alleging that Free People "failed to pay all rents . . . required under the Lease" such that Delshah was "entitled to a money judgment")).  Comparing the Complaint with the Amended Complaint, we struggle to see why three attorneys from two different firms needed more than 40 hours to revise Delshah's breach of contract allegations. Accordingly, we agree with Free People that the amount of time the Firms expended on the Amended Complaint was unreasonable, such that a modest reduction in the overall hours is warranted.  See Mary Jo C. v. Dinapoli, No. 09 Civ. 5635 (SJF) (ARL), 2014 WL 7334863, at *12 (E.D.N.Y. Dec. 18, 2014) (deeming unreasonable eight hours attorney expended to draft 15-page amended complaint where original twelve-page complaint was drafted in less than seven hours); see also Hines v. 1025 Fifth Ave. Inc., No. 14 Civ. 3661 (SAS), 2015 WL 4006126, at *6 (S.D.N.Y. 2015) (reducing hours awarded to account for unreasonable number of hours plaintiff's attorney expended drafting complaint); Williams v. N.Y.C. Housing Auth., 975 F. Supp. 317, 326–27 (S.D.N.Y. 1997) (noting that "[i]t is . . . proper to reduce a fee request when two or more attorneys have duplicated each other's work, since some of the work was unnecessary and the time claimed was thus unreasonable").

As to the time the Firms expended drafting discovery demands and responses, the parties have not provided us with the demands and responses or even told us how many there were, which would have allowed us to see how many and how complicated they were and thereby assess whether the time expended was reasonable.  Absent that information, we are unable to substantiate Free People's objection and therefore do not recommend any reduction with respect to these hours.

### b. __Block Billing and Other Billing Deficiencies__

As Judge Furman has observed, "any attorney who seeks court-ordered compensation in this Circuit 'must document the application with contemporaneous time records, specifying, for each attorney, the date, the hours expended, and the nature of the work done.'" Adusumelli v. Steiner, Nos. 08 Civ. 6932 (JMF), et al., 2013 WL 1285260, at *4 (S.D.N.Y. Mar. 28, 2013) (quoting Carey, 711 F.2d at 1148) (cleaned up)).  Free People argues that the Court should reduce the attorneys' fee award by 25% to account for the block billing that "regularly appears" in the Firms' billing records, of which it cites ten examples.  (ECF No. 231 at 10–13).  Block billing is "a time-keeping practice that involves stating the total daily time spent on a case, rather than separating out the time into individual entries describing specific activities."  Adusumelli, 2013 WL 1285260, at *4  "[C]ourts in this Circuit have sometimes applied a percentage reduction to block-billed entries based on the inherent difficulties the Court would encounter in attempting to parse out whether the number of hours spent on the work performed was reasonable[.]"  Id.  Nevertheless, "block billing is not automatically disfavored by courts in this district[,]" who tend to limit across-the-board reductions to "situations where there was evidence that the hours billed were independently unreasonable or that the block-billing was mixing together tasks that were not all compensable, or not all compensable at the same rate."  Id.

Delshah responds that "block billing" is a "common practice" under New York law, and that, in any event that the Firms' billing records, including the entries Free People cites, "contain substantial detail of the services rendered" and are not "vague[.]"  (ECF No. 234 at 8).  Delshah also asks the Court to take into account its "knowledge of the case[]" and to view the time entries "in context[.]"  (Id.)

Delshah shifts quite a burden to the Court in reviewing the Firms' billing records, which we have examined and found to be replete with composite entries, some of which are vague and require considerable imagination to discern the services provided. (ECF Nos. 225-2; 225-5; 225-7). Many entries—considerably more than the ten Free People has highlighted—consolidate multiple tasks, without breaking out how much time was spent on each individual task, impeding our ability to assess the reasonableness of the hours expended and thereby justifying a reduction. See Match Grp. v. Beazley Underwriting Ltd., No. 22 Civ. 4629 (LGS) (SLC), 2023 WL 9603886, at *9 (S.D.N.Y. Dec. 21, 2023) (recommending reduction in hours where timekeepers' use of block billing "significantly hindered this Court's ability to understand how much time was devoted to particular tasks"), adopted by, 2024 WL 863468 (S.D.N.Y. Feb. 29, 2024).

In addition, the billing records reflect several other problematic billing practices that justify a fee reduction, including:

> (1)    multiple timekeepers billing for the same conference or for internal calls and conferences. (ECF Nos. 225-2 at 7, 11, 43, 44, 46, 95, 96, 241; 225-5 at 13, 23, 28, 33, 38, 42, 47, 52, 56, 61, 65, 70, 74, 82, 86, 91, 95, 99, 107, 114, 118, 122, 126, 136, 140, 144, 148, 152, 157, 163, 172). See Greenburger v. Roundtree, No. 17 Civ. 3295 (PGG) (SLC), 2020 WL 6561598, at *13 (S.D.N.Y. Jan. 16, 2020) (recommending fee reduction for internal meetings, calls, and emails), adopted by, 2020 WL 4746460 (S.D.N.Y. Aug. 16, 2020); Williams v. Metro-North R.R. Co., No. 17 Civ. 3847 (JGK), 2018 WL 3370678, at *10 (S.D.N.Y. June 28, 2018) (collecting cases reducing fees for internal conferences, noting that "corporate scrutiny of outside counsel fees and commonplace rules prohibiting billing for internal conferences" made "it [] highly unlikely counsel would be able to bill a client for this quantity of internal conferences"), adopted by, 2018 WL 3368713 (S.D.N.Y. July 10, 2018).

> (2)    senior attorneys recording time at their regular hourly rate for administrative tasks more appropriate for paralegals. (See ECF No. 225-2 at 5 (senior attorney billing unspecified amount of time for "retriev[ing] and circulat[ing]" Fed. R. Civ. P. 12 and 15), 53 (senior attorney instructing court reporter), 56–57 (senior attorney "retriev[ing] exhibits" for depositions); see also id. at 118, 190; 225-7 at 6 (senior attorney assembling deposition exhibits)). See

BMaddox Enters. LLC v. Oskouie, No. 17 Civ. 1889 (RA) (SLC), 2023 WL 1418049, at *6 (S.D.N.Y. Jan. 6, 2023) (recommending reduction where partner billed at regular hourly rate for administrative tasks), adopted by, 2023 WL 1392075 (S.D.N.Y. Jan. 30, 2023); Angulo v. 36th St. Hosp. LLC, No. 19 Civ. 5075 (GBD) (SLC), 2020 WL 4938188, at *18 (S.D.N.Y. July 31, 2020) (recommending reduction in fees for administrative work senior attorney performed that was more appropriate for paralegal), adopted by, 2020 WL 4936961 (S.D.N.Y. Aug. 24, 2020).

(3)    vague, perfunctory, or duplicative entries (ECF Nos. 225-2 at 55 (0.3 hours for "Review deposition scheduling"), 118 (0.2 hours for "File maintenance"), 126 (two attorneys recorded 0.2 hours and 0.4 hours for "Reviewed and commended on Amended Notice of Removal"), 134 (0.2 hours for "File maintenance"); 225-5 at 28 (0.5 hours for "Work on issues re: amendment of complaint"), 38 (0.3 hours for "Follow-up on case management"), 42 (0.4 hours for "Follow-up on various issues and etc."), 47 (multiple entries for "Team communications and follow-up"), 52 (0.2 hours for "Follow-up on discovery" and 0.3 hours for Team follow-up"), 56 (multiple entries for "Team communications", 61 (same), 65 (same), 70 (0.1 hours for "Follow-up on team emails/issues"), 74 (0.2 hours for "Follow-up"), 82 (0.1 hour for "Follow-up communications"), 95 (multiple entries for "Team Communications"), 99 ("follow-up communications" and "Team communications"), 144 (0.3 hours for "Team communications"), 148 (multiple entries for "Team communications," "follow-up," and "etc."), 152 (0.6 hours for "Team comms."), 157 (multiple entries for "Team communications"), 163 (same); 225-7 at 4 ("worked on requests for admission"), 15 ("Multiple email [sic]")). See Agureyev v. H.K. Second Ave. Rest. Inc., No. 17 Civ. 7336 (SLC), 2021 WL 847977, at *12 (S.D.N.Y. Mar. 5, 2021) (reducing fees for entries that failed to clearly explain work performed).

(4)    unreasonable amounts of time for the indicated tasks.  (ECF No. 225-2 at 142 (0.3 hours for reviewing expert briefing schedule), 192 (0.4 hours for "Review[ing] email exchange regarding hearing being conducted remotely . . ."), 216 (1.0 hour for "Review[ing] CM/ECF notification granting request for extension of time to file objections"), 243 (0.3 hours for reviewing Judge Furman's local rules for briefs)).  See Kane v. Nat'l Farm Wholesale Fruit & Veg. Corp., No. 17 Civ. 9487 (VSB) (SLC), 2022 WL 20805006, at *4 (S.D.N.Y. Aug. 5, 2022) (recommending 10% reduction for excessive hours on certain tasks), adopted by, 2023 WL 6795421 (S.D.N.Y. Oct. 13, 2023).

The Firms' billing records therefore contain "evidence that the hours billed were independently unreasonable or that the block-billing was mixing together tasks that were not all compensable, or not all compensable at the same rate[,]" such that an across-the-board

reduction is warranted. <u>Adusumelli</u>, 2013 WL 1285260, at *4. To account for both the instances where block-billing precluded our ability to deem all hours reasonable as well as the other problematic billing practices in the Firms' time entries, the Court finds that a 20% reduction to the Firms' requested fees is appropriate and in line with the reductions that courts in this District typically apply to account for similar billing deficiencies that "impede the Court's ability to assess the reasonableness of counsel's hours." <u>Match Grp., LLC</u>, 2023 WL 9603886, at *10 (cleaned up) (applying a 20% reduction for block billing and staffing inefficiencies); <u>see</u> <u>Kirsch</u>, 148 F.3d at 173 (affirming 20% fee reduction for vagueness and other billing deficiencies); <u>BMaddox Enters. LLC</u>, 2023 WL 1418049, at *6 (applying 20% reduction to account for block-billing, internal communications, and administrative entries); <u>Themis Cap.</u>, 2014 WL 4379100, at *7 (applying 20% reduction for "impermissibly broad" block billing).

### 2.  <u>Results in This Action</u>

Free People argues that because the Judgment amounts to only approximately 63% of the relief that Delshah sought, "a reduction in Delshah's attorneys' fees is warranted here." (ECF No. 231 at 13–14). Free People points to the Court's rejection of Delshah's arguments regarding the Termination Date, exclusion of percentage rent, and "interest on interest" as grounds for "capp[ing]" the award of attorneys' fees at no more than 75% of the amount Delshah has requested. (ECF No. 231 at 14–15). <u>See</u> <u>Delshah IV</u>, 2024 WL 1120388, at *7–9 (finding that Termination Date of Lease was June 10, 2020, not December 17, 2020, as Delshah had argued); <u>accord</u> <u>Delshah II</u>, 2022 WL 3516133, at *3; <u>Delshah I</u>, 2022 WL 4228213, at *19. Delshah counters that Free People's argument for reduction based on degree of success "applies only to federal statutory causes of action," not to Delshah's contractual claim for attorneys' fees under

the Lease. (ECF No. 234 at 5). Delshah points out that the "central issue" in this case was Free People's breach of the Lease, an issue on which Delshah was successful and was "awarded over $6.7 million in damages." (Id. at 6). Thus, Delshah argues, denial of certain elements of its claimed damages "does not serve to reduce the consequent contractual attorneys' fees under" New York law. (Id.)

The Supreme Court has observed that "the most critical factor" in a district court's determination of what constitutes reasonable attorneys' fees in a given case "is the degree of success obtained" by the plaintiff. Farrar v. Hobby, 506 U.S. 103, 114 (1992); accord Kassim v. City of Schenectady, 415 F.3d 246, 254 (2d Cir. 2005); Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 152 (2d Cir. 2008); Pino v. Locascio, 101 F.3d 235, 237–38 (2d Cir. 1996); JTRE Manhattan Ave. LLC v. Cap. One, N.A., No. 21 Civ. 5714 (JLR), 2024 WL 4880075, at *4 (S.D.N.Y. Nov. 25, 2024) (holding that defendant who successfully prevailed on all claims against it and obtained partial judgment on liability on breach of contract counterclaim was successful and entitled to attorneys' fees); see also Lancer Indem. Co., 127 A.D.3d at 1036 (explaining that one of the factors relevant to adjustment of lodestar is "the amount involved and benefit resulting to the client from the services")). "Where the lines between time spent on successful versus unsuccessful claims are blurry, a court need not become enmeshed in a meticulous analysis of every detailed fact of the professional representation to determine the proper award[.]" Smith v. Smith, No. 17 Civ. 6648 (PAE), 2020 WL 1934984, at *3 (S.D.N.Y. Apr. 22, 2020) (cleaned up) (applying 25% reduction to lodestar amount to account for plaintiffs' "mixed record" of success). To account for the relative degree of success, "the court has discretion to simply deduct a

reasonable percentage of hours claims as a practical means of trimming fat from a fee application."  <u>Kirsch</u>, 148 F.3d at 173.

As an initial matter, Delshah is incorrect in asserting that degree-of-success reductions "appl[y] only to federal statutory causes of action."  (ECF No. 234 at 5).  We have found several examples of courts in this District factoring in the degree of success in actions that did not involve a federal statutory right to recover attorneys' fees, including breach of contract actions.  <u>See</u>, <u>e.g.</u>, <u>JTRE Manhattan Ave. LLC</u>, 2024 WL 4880075, at *4  (in action involving claim for breach of commercial lease, recognizing that "degree of success" was "the most critical factor in determining the reasonableness of a fee award"); <u>Smith o/b/o 50 E. 69th St. Corp. v Smith</u>, No. 17 Civ. 6648 (PAE), 2020 WL 1934984, at *4 (S.D.N.Y. Apr. 22, 2020) (in shareholder derivative action involving breach of fiduciary duty claims, finding that plaintiffs' "mixed record of success" warranted 25% reduction in attorneys' fee award); <u>see</u> <u>also</u> <u>Lancer Indemn. Co.</u>, 127 A.D.3d at 1036 (noting that "benefit resulting to the client" is relevant to lodestar adjustment).

In any event, we need not tarry here on defining the scope of degree-of-success reductions because we nevertheless agree with Delshah that the amount of the Judgment relative to the amount it originally sought does not warrant an additional reduction in the attorneys' fee award.  Here, Delshah "successfully prevailed" on its claim that Free People breached the Lease.  <u>JTRE Manhattan Ave. LLC</u>, 2024 WL 4880075, at *4 (holding that defendant who defeated all defenses and prevailed on liability on breach of contract claim was entitled to requested attorneys' fees); <u>see</u> <u>Delshah II</u>, 2022 WL 3536133, at *1 (holding that "Delshah is entitled to judgment on liability"); <u>id.</u> at *4–5 (dismissing Free People's affirmative defenses and counterclaims); <u>cf.</u> <u>Delshah III</u>, 2022 WL 5108049, at *1 (reinstating Free People's failure-to-

mitigate defense as "relevant only to damages"). That the Court did not fully adopt each of Delshah's damages calculations, see Delshah V, 2024 WL 4648014, at *4; Delshah IV, 2024 WL 1120388, at *11, *13, does "not negate the fact that [Delshah] prevailed" in having Free People declared in breach of the Lease "thus entitling [it] to counsel fees[.]" Duane Reade v. 405 Lexington, L.L.C., 19 A.D.3d 179, 179-80 (1st Dep't 2005). Here, Delshah undisputedly received "a substantial part of the relief [it] requested[,]"—well more than half of its initial calculations—such that no additional reduction based on the amount of the Judgment is warranted. Board of Mgrs of 55 Walker St. Condo. v. Walker St., LLC, 6 A.D.3d 279, 280 (1st Dep't 2004); see Cmty. Counseling & Mediation Servs. v. Chera, 115 A.D.3d 589, 590 (1st Dep't 2014) (declining to reduce attorneys' fees award plaintiff who prevailed on primary breach of lease claim and received "substantial relief" even though plaintiff did not prevail on alternative claims).

Accordingly, we respectfully recommend that no additional reduction in the attorneys' fee award is warranted based on Delshah's degree of success.

### 3. Calculating the Firms' Fees

Applying the recommended 20% reduction to the Firms' requested fees for the reasons set forth in sections IV.A.1.a and b, supra, we respectfully recommend that the Firms be awarded fees in the following amounts:

|  | **Requested Fees**[8] | **20% Reduction** | **Awarded Fees** |
|---|---|---|---|
| **Woods Oviatt** | $675,057.50 | $135,011.50 | $540,046.00 |
| **Rosenberg Estis** | $122,085.50 | $24,417.10 | $97,668.40 |
| **Duke Holzman** | $43,662.10 | $8,732.42 | $34,929.68 |
| **TOTAL** |  |  | $672,644.08 |

---

[8] See p.3 & n.3, supra.

### B. Costs

#### 1. Litigation Costs

Delshah seeks an award of $18,588.40 in litigation costs for e-discovery, court reporting, service of process, legal research, travel, and similar services.  (ECF No. 226 at 7; 15).  Delshah has provided documentation supporting the nature and amount of each of these costs.  (ECF Nos. 225-2 at 1; 225-5 at 1; 225-7 at 1; 237; 237; 237-1–237-9).  See Fisher v. SD Prot. Inc., 948 F.3d 593, 600 (2d Cir. 2020) (explaining that prevailing party seeking costs award must submit adequate supporting documentation); accord Match Grp., LLC, 2023 WL 9603886, at *10.  Each category of these costs was "necessarily incurred" in this litigation and are the type "regularly charged to clients."  City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG, No. 17 Civ. 10014 (LGS), 2020 WL 7413926, at *4 (S.D.N.Y. Dec. 17, 2020).  Finally, Free People is not challenging any of these costs.  (ECF No. 231 at 15 n.2).  Accordingly, we respectfully recommend that Delshah be awarded $18,588.40 in litigation costs.

#### 2. Expert Costs

Free People objects to Delshah's request for $102,268.50 in expert costs for Ms. Locatell because the Court "declined to adopt a single calculation or position [she] urged[.]"  (ECF No. 231 at 16).  As Free People points out (id.), the Court observed that due to multiple corrections and revisions, Ms. Locatell's calculations ha[d], at most, minimal utility in the exercise of calculating Delshah's damages.  Delshah IV, 2024 WL 1120388, at *12.  What Free People omits, however, is the Court's subsequent expression of exasperation that, after the Hearing, "the parties again revised their damages calculations[,]" and that "the parties' repeated revisions of their calculations [] only exacerbated the challenge of executing an already-complicated calculation of

damages under Section 22(d) of the Lease." Id. (emphasis added).  Thus, Free People, too, shares

some of the blame for the Court's inability to calculate Delshah's damages using the information

the parties provided during the inquest phase.  Delshah responds that the Court's rejection of

Ms. Locatell's opinions "is not an appropriate basis for reduction" of her fees, and, in any event,

her hourly rate of $950 is comparable to that of Free People's expert, Thomas J. Tener, who

recorded his time at $900 per hour.  (ECF No. 234 at 10–11).

"[C]ourts in this District routinely reimburse prevailing parties for the costs of expert

witnesses and consultants, regardless whether the expert testified at trial." Themis Cap., 2014

WL 4379100, at *9 (collecting cases).  Courts in this District also use the lodestar method to assess

the reasonableness of expert fees.  See Matteo v. Kohl's Dep't Stores, Inc., No. 09 Civ. 7830 (RJS),

2012 WL 5177491, at *5 (S.D.N.Y. Oct. 19, 2012), aff'd, 533 F. App'x 1 (2d Cir. 2013); accord

Themis Cap., 2014 WL 4379100, at *9.  To determine whether the expert's rate is reasonable,

courts in this Circuit consider eight factors:

> (1) the expert's area of expertise, (2) the education and training that is required
> to provide the expert insight that is sought, (3) the prevailing rates for other
> comparably respected available experts, (4) the nature, quality, and complexity of
> the [opinions] provided, (5) the cost of living in the particular geographic area, (6)
> the fee being charged by the expert to the party who retained [her], (7) fees
> traditionally charged by the expert on related matters, and (8) any other factor
> likely to be of assistance to the court in balancing the interests implicated by Rule
> 26.

Matteo, 2012 WL 5177491, at *5.

As with attorneys' fees, the party "seeking reimbursement for expert fees bears the

burden of proving reasonableness." Penberg v. HealthBridge Mgmt., No. 08 Civ. 1534 (CLP), 2011

WL 1100103, at *15 (E.D.N.Y. Mar. 22, 2011).  If the party does "not provide sufficient evidence

to support [its] interpretation of a reasonable rate, a court may use its discretion to determine a

reasonable fee." <u>Matteo</u>, 2012 WL 5177491, at *5.  Courts have discretion to "apply an across-the-board reduction of [an] expert's fees." <u>Id.</u>

As to Ms. Locatell's hourly rate, the only evidence that Delshah provides to support its assertion that $950 is a reasonable market rate for expert services of this type is that Free People's expert, Mr. Tener, charged $900.  (ECF No. 234 at 10–11).  Not only does Delshah fail to explain why Ms. Locatell's rate should be higher than Mr. Tener's, they fail to explain why her hourly rate is almost twice that of the Delshah's lead attorney in this matter.  (<u>See</u> ECF No. 225-2 at 1–3 (Woods' hourly rates of $175-$565)).  Delshah has not provided "truly compelling evidence" to warrant endorsing an hourly rate for Ms. Locatell greater than that of Mr. Tener. <u>See</u> <u>Matteo</u>, 2012 WL 5177491, at *6 (reducing expert's hourly rate based on lack of information regarding the prevailing rates for comparable experts and the fee that the expert traditionally charged).  Accordingly, we respectfully submit that $900 is a more reasonable hourly rate for Ms. Locatell.

As to Ms. Locatell's hours expended, while some of her time entry descriptions are somewhat perfunctory—<u>e.g.</u>, two hours for "depo prep", nine hours for "prep for subpoena", and eight hours for "damages report update" (ECF No. 225-9 at 1–2)—overall, her time records "are sufficiently detailed for the purposes of assessing the nature and timing of the services [she] provided [ ] and the fees [she] charged." <u>Watson v. E.S. Sutton, Inc.</u>, No. 02 Civ. 2739 (KMW) (THK), 2006 WL 6570643, at *13 (S.D.N.Y. Aug. 11, 2006), <u>adopted</u> <u>as</u> <u>mod.</u> <u>on</u> <u>other</u> <u>grounds</u>, 2007 WL 2245432 (S.D.N.Y. Aug. 3, 2007).  While Free People is certainly correct that the numerous corrections to Ms. Locatell's calculations rendered them less than helpful to the Court as to the Section 22(d) damages, <u>Delshah IV</u>, 2024 WL 1120388, at *12, ultimately, Ms. Locatell's

calculations appear to have been substantially incorporated into the Judgment that Judge Furman entered.  See Delshah VI, 2024 WL 5107364, at *3 (directing parties to meet and confer and submit proposed judgment); Delshah V, 2024 WL 4648014, at *6 (same).  (See ECF Nos. 149 (Ms. Locatell's revised calculations); 215 (Judgment); 225-2 at 240, 242–43 (Woods' billing records reflecting consultation with Ms. Locatell regarding proposed judgment)).  Accordingly, we do not recommend any reduction to Ms. Locatell's hours expended.

Applying the revised hourly rate of $900 to Ms. Locatell's 107.65 hours expended, we respectfully recommend that Delshah be awarded $96,885.00 in expert costs.

## V.CONCLUSION

For the reasons set forth above, we respectfully recommend that Delshah be awarded:

(1)  $672,644.08 in attorneys' fees, and

(2)  $18,588.40 in litigation costs, and

(3)  $96,885.00 in expert costs.

Dated:        New York, New York
              July 31, 2025

_____
SARAH L. CAVE
United States Magistrate Judge

*         *         *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)).  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with the Clerk of the Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Furman.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).