

**Brian P. Morgan**
Partner
brian.morgan@faegredrinker.com
212-248-3272 direct

faegredrinker.com

**Faegre Drinker Biddle & Reath** LLP
1177 Avenue of the Americas, 41st Floor
New York, New York  10036
+1 212 248 3140 main
+1 212 248 3141 fax

June 4, 2026

**VIA CM/ECF**

Judge Jesse M. Furman
United States District Court for the Southern District of New York
500 Pearl Street, Room 2510
New York, NY 10007

**Re:**    *DELSHAH 60 Ninth, LLC v. Free People of PA, LLC*, **Case No. 20-cv-5905**

Dear Judge Furman:

We represent Defendant/Counterclaim Plaintiff Free People of PA LLC n/k/a URBN US Retail LLC ("Free People") in the above-captioned matter.  We write with the consent and approval of counsel for Plaintiff/Counterclaim Defendant DELSHAH 60 Ninth, LLC ("Delshah") pursuant to Your Honor's May 29, 2026 Order [ECF No. 250].  Because the parties disagree as to the appropriate next steps in light of the Second Circuit's decision [ECF No. 248] (the "Decision"), the parties' respective positions are set forth below.

### Plaintiff's Position

Neither the District Court's decision nor the Second Circuit's decision considered in any way the effect of events after the "temporary taking period"  expired including,  Free People's continued occupancy until July 31, 2020, and an absence of Free People's notice of termination of the Lease either due to the "taking" or after it voluntarily abandoned the premises on July 31, 2020. Further, no Court has addressed the damages as provided in the Lease incurred by Delshah based on the proportion of space not affected by the temporary taking.  With the reversal of  the District Court's grant of summary judgment to Delshah on its claim for breach of contract, the reversal of summary judgment on Free People's counterclaim  and the remand for "further proceedings,", there is no longer a "final judgment" and, hence,  no res judicata thus leaving open many issues never reached by any of the Courts.

The Courts recognize a "Mandate Rule" under the law of the case doctrine. Thus, where an appellate court decides and then remands a case, the court to which the case is remanded must proceed in accordance with the mandate, and the Mandate Rule prevents relitigating in the District Court not only of matters expressly decided but also issues impliedly resolved. *Sompo Japan Ins. Co. v Norfolk So. Ry. Co.,* 732 F.3d 165, 175(2d Cir. 2014).  Nonetheless, the cases recognize a "corollary," that "law of the case does not extend to issues an appellate court did not address." 732 F.3d at 176.  Thus, the Second Circuit in *Sompo Japan* held that "[a] mandate is controlling only

DMS_US.377709212.3

as to matters within its compass," *Id*, citing *New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co*., 352 F.3d. 599, 605 (2d Cir. 2003).

Thus, in *New England Ins. Co*., the Second Circuit previously held that the plaintiff was entitled to pre-judgment interest commencing December 20, 2000, the date of a jury verdict in a federal suit.   On remand, The District Court went on to award prejudgment interest for periods prior to the federal jury verdict.  On appeal from the remand, the Second Circuit held that this did not violate the Mandate Rule because "the mandate did not cover pre-federal-verdict interest," an issue not previously addressed by the appellate court. 352 F.3d at 606.

In *Serby v. First Alert, Inc.,* 783 Fed. Appx. 38 (Case No. 18-2780) (2d Cir. 2019), the District Court on remand construed a different portion of a settlement agreement than the Second Circuit had construed regarding a smoke detector patent.  On appeal from the remand, the Second Circuit affirmed the District Court and held that because the Second Circuit had  not previously reached the issue  of the construction of the remainder of the settlement agreement, " [t]he mandate therefore did not foreclose the district court from considering this other portion of the settlement agreement." 783 Fed. Appx. at 40.

The Second Circuit noted that the "taking" was a "temporary taking" which ended June 22, 2020. The Second Circuit's Opinion at page 6 noted that "the lease entitled Free People to a reduction in rent in proportion to the amount of space affected by the taking," quoting the last sentence of Lease Section 20(a). Thus, per the Second Circuit's opinion, square footage of storage of inventory downstairs and in the sales area must be calculated.  Advertising space (the logo and windows) must also be considered.  Proportionate rent reduction was never decided because of the District Court's grant of summary judgment.  The Second Circuit also found Delshah's termination notice was therefore in breach.  It never considered Free People's paying rent after the termination notice and reinstating the landlord tenant relationship because all of this was mooted by the original District Court decision finding a breach in March of 2020.

Judge Furman should also apply Lease Section 20(e) which provides "in the event of any total or partial taking, whether temporary or not, Tenant waives all claims against Landlord . . . ."  Delshah will argue that clause obviates Free People's damage claim in its Counterclaim as well as its unjust enrichment claim.

Under any interpretation, Free People's rent from June 22 to June 30 remains open and unpaid subject to Judge Furman's calculation thereof. Because the temporary taking ended June 22, 2020 before continuing at least 180 days, the temporary taking here would not be grounds under Section 20(c) for Free People's termination of the lease. The Second Circuit Opinion page 17 held that the taking provision excused Free People from paying rent during the relevant period, and "it follows that Free People is entitled to summary judgment on its claim that Delshah improperly terminated the lease," on June 10, 2020.  Thus, as held by the Second Circuit, the Lease remained viable, and Free People's rent payments on June 29, 2020 and its continued conduct of business as usual though July 31, 2020 were either reaffirmations of the continued existence of the Lease or reinstatement of the Lease.

Free People remained obligated for rent under the Lease notwithstanding its unilateral abandonment of its space on July 31, 2020.  Free People's continued obligation under the Lease after the expiration of the temporary taking period has never been adjudicated by any Court because of the Summary Judgment determination by the District Court which has now been reversed. Further, this Court should determine the significance of the voluntary rent payments

made in August and September 2020 and accepted by Delshah at a time when the Lease had not been terminated (as held by the Second Circuit) as well as Delshah's rescission of its earlier termination notice.

Neither the District Court nor the Second Circuit considered the issue raised in Delshah's Second Amended Complaint that, as a result of Free People's failure to pay rent in October and November 2020, the reinstated Lease was terminated on December 10, 2020. Although the prior damage calculation under Section 22 of the Lease has become moot as a result of the Second Circuit's decision, Delshah is entitled to damages for unpaid rent after the expiration of the temporary taking period and the damages incurred after the December 10, 2020 Lease termination under the damage provision of Section 22 of the Lease. Additionally, Delshah is entitled to either damages or a set off for the proportion of space not affected by the government taking orders during the temporary taking period.

## Defendant's Position

As explained below, Free People respectfully submits that Delshah has no remaining claims to pursue, and that Free People's own claims should be pursued in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

**A.     The Only Remaining Issues to Be Resolved Are Free People's Unjust Enrichment Claim, Damages on Its Contract Claim, and Its Claim for Attorneys' Fees and Costs.**

In the Decision, the Second Circuit awarded judgment in Free People's favor both on Delshah's claim for breach of the lease and Free People's counterclaim for breach of the lease, and revived Free People's counterclaim for unjust enrichment. *See* Decision at 14, 17, 18. With respect to Free People's damages, the Second Circuit "express[ed] no view" and ordered that "the calculation of damages for Free People's breach-of-contract counterclaim and the calculation of damages, if any, for Free People's revived unjust-enrichment claim shall be resolved in the first instance by the district court on remand." Decision at 20, n.6. Thus, the Decision contemplates further proceedings only with respect to the following: (1) Free People's damages on its breach of contract counterclaim; and (2) Delshah's liability and Free People's damages on Free People's unjust enrichment counterclaim. Once these issues have been resolved, Free People intends to seek its reasonable attorneys' fees, costs, and expenses pursuant to Section 41 of the lease.

Based on the parties' prior communications, Free People anticipates that Delshah will argue that the Second Circuit, notwithstanding the unambiguous language it used disposing of Delshah's affirmative claims and the limited nature of its remit to this Court on Free People's counterclaims and damages, nevertheless left open multiple factual and legal issues *on Delshah's claims* for this Court to adjudicate. There are none. As an initial matter, a number of the issues raised in Delshah's letter were adjudicated in the Decision and cannot be relitigated now. *See Doe v. N.Y. City Dept. of Social Services*, 709 F.2d 782, 788 (2d Cir. 1983) (prohibiting the relitigation in the district court of matters expressly and implicitly decided by the appellate court). For example, Delshah has suggested that this Court must ascertain the square footage of the space used by Free People while the retail store was closed in order to calculate the abatement of rent to which Free People is entitled. However, the Second Circuit found that Free People was entitled to a one-hundred percent (100%) abatement of rent because Free People was unable to operate its business from the premises. *See* Decision at 14 ("Because New York's emergency orders prevented Free People from operating 'its business' on the premises between March 22 and June 22, 2020, the lease excused Free People's obligation to pay rent during that period."). Delshah acknowledged

as much when it unsuccessfully petitioned for a rehearing. Petition for Panel Rehearing [Case No. 25-148, ECF No. 90.1] ("Rehearing Petition") at 6 ("Indeed, the panel's decision granted Free People a 100% rent abatement . . . .")

Delshah has further asserted that the Second Circuit failed to consider its alternative argument that, following its improper termination of the lease, the lease was "reinstated" before being terminated again by Delshah in December 2020. Delshah raised this argument in support of its motion for summary judgment [ECF No. 69, at 19, 22] and in opposition to Free People's motion for summary judgment [ECF No. 86, at 21-29]. When Magistrate Judge Cave did not address this argument in her Report and Recommendation, Delshah did not object, and when Free People appealed from the Court's decision, Delshah chose not to renew its alternative argument in its appellate briefing. As a result, they are barred from doing so now. *See U.S. v. Aquart*, 92 F.4th 77, 87-88 (2d Cir. 2024) (holding that the "mandate rule" not only bars relitigation of issues explicitly or implicitly decided on appeal, but also issues that were "ripe for review at the time of an initial appeal but . . . nonetheless foregone" by a party, and observing that a "contrary construction of the mandate rule would effectively eviscerate it by creating an incentive for parties to hold ripe arguments in reserve") (citing *U.S. v. Quintieri*, 306 F.3d 1217, 1229 (2d Cir. 2002)) (internal citations omitted); *Parmalat Capital Fin. Ltd. v. Bank of America Corp.*, 671 F.3d 261, 270-71 (2d Cir. 2012) (rejecting the defendants' attempt to rely on alternative grounds for denying abstention that had not been pursued in the prior appeal). It was only after the Decision was issued that Delshah re-asserted, in the Rehearing Petition, its arguments that the improper termination was vitiated and the lease reinstated. [Case No. 25-148, ECF No. 90.1 at 4-5, 14-19] ("The panel further misapprehended and overlooked Free People's liability as a result of the reinstatement of Free People's tenancy.") The Rehearing Petition having been denied, Delshah now seeks a second (or third) bite at the apple. Delshah's attempt to avoid the consequences of its litigation strategy and the import of the Second Circuit's decision should not be countenanced, and the Court should confirm that Delshah has no remaining claims to pursue in this Court.

**B.      Free People Should Pursue Its Remaining Claims in the Bankruptcy Court.**

While the appeal was pending, Delshah filed for and emerged from chapter 11 bankruptcy proceedings, without a discharge. *See In re Delshah 60 Ninth LLC, et al.*, Case No. 24-20259-PRW (Bankr. S.D.N.Y.) (the "Bankruptcy Case"). Free People timely filed a proof of claim in the Bankruptcy Case for $311,265.47, representing Free People's damages on its counterclaims, which proof of claim was deemed allowed when Delshah did not object to it. Second Amended Plan of Reorganization [Case No. 24-20259, ECF No. 30] (the "Plan") at 4. The existence of that allowed claim obviates any need for this Court to calculate Free People's damages on its counterclaims. Further, because the Plan provides that unsecured claims like Free People's shall be paid in full, and because the Bankruptcy Court retained exclusive jurisdiction with respect to the Plan's consummation, Free People respectfully submits that the next step should be for Free People to ask the Bankruptcy Court to reopen the Bankruptcy Case so that Free People can enforce its claim and seek its reasonable attorneys' fees. *See* Order Approving Disclosure Statement and Confirming Debtor's Plan or Reorganization [Case No. 24-20259, ECF No. 43).

-5-                                                   June 4, 2026

Respectfully submitted,

*/s/ Brian P. Morgan*

Brian P. Morgan

cc:     All Counsel of Record (via/CM/ECF)
Encl.